**Arch POAG, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Feb. 28, 1978.

Certiorari Denied by Supreme Court July 10, 1978.

Tom H. Williams, Jr., Nashville, Ray Hollis, Waynesboro, for appellant.

Brooks McLemore, Jr., Atty. Gen., William Oscar Kelly, Asst. Atty. Gen., Nashville, Elmer D. Davies, Jr., Dist. Atty. Gen., Franklin, Douglas T. Bates, III, Asst. Dist. Atty., Centerville, for appellee.

OPINION

TATUM, Judge.

The appellant, Arch Poag, was convicted of cutting and removing timber of another in violation of T.C.A. § 39–4521 and his

punishment was fixed at eleven months and twenty-nine days in the County Jail. The appellant made three assignments of error in which he insists that the evidence was insufficient to support his conviction and preponderated against the jury verdict. He also claims that the State failed to prove that the prosecuting witness had legal title to the land or was in actual or constructive possession of it when the timber was cut and the Trial Judge erred in refusing certain evidence offered on his behalf. The assignments are without merit.

We will summarize the facts accredited by the jury. On 29 September 1945, two tracts of land were conveyed to Noah Wiss by warranty deeds. One tract, consisting of approximately 200 acres, was located in Hickman County. The other tract consisting of 50 acres, was located in Lewis County, but adjoined the 200-acre tract. Separate deeds were given for each tract. Mr. Wiss had a residence on the 200-acre tract and much of it was suitable for cultivation and pasture and used in this manner. The 50-acre tract was unenclosed, rolling woodland.

In late August, 1974, the appellant cut and removed approximately 65 hickory, poplar and oak trees from the central portion of the 50-acre tract. He marketed the timber at Turnbow's Sawmill for $328.00.

The appellant testified that he and his wife had searched the public records of Lewis and Hickman County and concluded that there were from 300 to 600 acres of "vacant" (unowned) land in this area. They had a surveyor plat all of the deeds that they could find from the public records and then their son-in-law signed a quitclaim deed to them to the lands that they thought were not covered by any deed. The quitclaim deed was dated 10 August 1973, and was made and accepted only for the purpose of permitting the appellant and his wife to set up a claim to the land. The appellant's son-in-law did not purport to have any interest in the land. The appellant did not pay taxes on the land.

Prior to cutting the timber, the appellant requested Mr. Wiss to pay one-half the expenses of having his 50-acre tract surveyed. Mr. Wiss refused, but on 24 August 1974, had the land surveyed by a licensed surveyor of his own choice. The appellant had Mr. Wiss's land surveyed by his wife's nephew who was a licensed surveyor. The appellant and his son-in-law accompanied Mr. Wiss's surveyor in running the eastern line of the 50-acre tract and were present when the southeast corner was located.

We will first address the appellant's assignment in which he insists that the State failed to prove that Mr. Wiss was the owner of the 50-acre tract. When one acquires different tracts of land conveyed by separate deeds, or by the same deed when the tracts are defined by district boundaries, the actual possession of one of the tracts is not extended by operation of law to the other, although the two tracts adjoin. *Camp v. Riddle*, 128 Tenn. 294, 160 S.W. 844 (1913); *Lumber & Coal Co. v. Bass,* 136 Tenn. 687, 191 S.W. 341 (1916). Thus, the actual possession of the 200-acre tract did not give Mr. Wiss constructive possession of the 50-acre tract. The State insists that Mr. Wiss's legal title does not depend upon a theory of constructive possession.

The appellant relies on *Yates v. State*, 206 Tenn. 118, 332 S.W.2d 186 (1960). In that case, the Tennessee Supreme Court held that: "Title must be proved either (1) by deraignment from the State, or (2) from a common source, or (3) by adverse possession under some statute of limitations, or (4) adverse possession without any assurance of title for a period of twenty years or more from which under our common law a title will be presumed."

It is the theory of the State that there was evidence upon which the jury could find Mr. Wiss to be the presumed owner of the land under T.C.A. § 28–209:

"28–209. *Presumption of ownership from payment of taxes.*—Any person holding any real estate or land of any kind, or any legal or equitable interest therein, who has paid, or who and those through whom he claims have paid, the state and county taxes on the same for

more than twenty (20) years continuously prior to the date when any question arises in any of the courts of this state concerning the same, and who has had, or who and those through whom he claims have had, his deed, conveyance, grant or other assurance of title recorded in the register's office of the county in which the land lies, for said period of more than twenty (20) years, shall be presumed prima facie to be the legal owner of said land."

There was evidence that Mr. Wiss sold the merchantable timber on the 50-acre tract in 1955 and again in 1970. In addition, he sold small amounts of timber from the tract from time to time. He cut firewood for his own use from the 50-acre tract and he also cut cedar posts for his own use. He sold minerals for a minimum of a five-year period in 1947 and permitted people to hunt on the land. He paid State and County taxes on the 50-acre tract for the past thirty years. His deed was dated 29 September 1945, and has been recorded since 1 March 1947.

There was credible evidence that the land was susceptible by its nature and character as a timber farm only. In *Derryberry v. Ledford*, 506 S.W.2d 152, 157 (Tenn.App. 1973), the Court held:

"The land in dispute is unimproved and not under cultivation but the plaintiffs and their predecessors in title have exercised such rights and claims of ownership as they were capable of exercising over land of this nature and character.

It has been held that only such use and occupation of land under claim of ownership as it is susceptible of by its nature and character is necessary for constituting adverse possession or prescription."

Also see, *Moffitt v. Meeks*, (1946), 29 Tenn.App. 609, 199 S.W.2d 463; *Creech v. Jones*, 37 Tenn. 631 (1858).

We hold that there was evidence upon which the jury could find actual possession by Mr. Wiss of the 50-acre tract

considering the situation and nature of it, the uses to which it is adapted, and the sort of possession of which it is susceptible. There was no evidence that the appellant or any other person had actual or constructive possession of the land since it was acquired by Mr. Wiss. The evidence supports the finding of the jury that Mr. Wiss was the legal owner of the land by virtue of the presumption under T.C.A. § 28–209.

The appellant next contends that the State failed to prove any of the essential elements of the offense. The crime is defined:

"39–4521. *Cutting or removing timber from land of another for purpose of marketing—Penalty.*—It shall be a felony for anyone knowingly, willfully, and maliciously to cut, or to remove for the purpose of marketing the same, timber from the lands of another, without the consent of the owner of the timber. Anyone convicted of a violation of the provisions of this section shall be imprisoned in the penitentiary for a period of not less than one (1) year nor more than three (3) years." [1]

In *State v. Smith*, 119 Tenn. 521, 525, 526, 105 S.W. 68, 69 (1907), the words "knowingly, willfully and maliciously" were defined as follows:

"The word 'knowingly' has been construed by this court as being that state of mind wherein the *person charged was in possession of facts under which he was aware he could not lawfully do the act whereof he was charged;* knowledge of the law being necessarily imputed to him, as in all criminal cases. This was held in a case wherein the party was indicted for illegal voting under a statute which provided that 'any person who shall knowingly vote at any election, not being at the time a qualified voter in the county in which he so votes, shall be adjudged guilty of a misdemeanor.' etc. *McGuire v. State*, 7 Humph. 54. 'Wilfully' means *intentionally; that is, that the person do-*

1. The jury fixed punishment at eleven months and twenty-nine days under T.C.A. § 40–2703.

ing the act intended at the time to perform that act. The word 'maliciously,' in the connection in which it appears, is used in the broad, legal sense of criminal intention, or that state of mind of a person who does a wrongful act intentionally or willfully, and without legal justification or excuse. The three terms taken together contemplate a case wherein a man acts advisedly, intentionally, and with criminal intent, in the sense in which the latter expression has been just explained. The word 'feloniously' fully covers the meaning of the word 'maliciously' just indicated." [Emphasis supplied.]

■ We hold that the evidence summarized above justified the jury in finding that the appellant knowingly, willfully and maliciously cut the timber. There was substantial evidence that the appellant knew that Mr. Wiss owned the land. There was abundant evidence that the appellant knew that he did not own the land or the timber. There was overwhelming evidence that the appellant actually cut the timber without the permission of the owner or anyone he thought to be the owner.

■ The evidence is conclusive that the appellant did, in fact, market the timber and from this circumstance, the jury was entitled to infer that the appellant had this intent when the timber was cut. The number of trees cut and the fact that they were removed from the land further evidences the appellant's intent to market the timber. An accused's knowledge and intent may be proved by circumstantial evidence. *Bennett v. State*, 530 S.W.2d 788 (Tenn.Crim. App.1975); *Hall v. State*, 490 S.W.2d 495 (Tenn.1973).

The appellant has failed to demonstrate that the evidence preponderates against the jury verdict of guilty as to any essential element of the crime, including the ownership of the land and timber involved, as

required by the familiar rules discussed in *State v. Grace*, 493 S.W.2d 474 (Tenn.1973); *Sikes v. State*, 524 S.W.2d 483 (Tenn.1975).

Finally, the appellant urges that the Trial Court erred in refusing to allow the testimony of Nick McClain, appellant's son-in-law, as to certain statements by Mr. Wiss. The appellant offered evidence by Mr. McClain that he (McClain) was doing dozier work for Mr. Wiss about three-fourths of a mile from where the logs were cut. Mr. McClain testified outside the presence of the jury that when he reached the point near the southwest corner of the 200-acre tract and the northwest corner of the 50-acre tract, Mr. Wiss said, "I think you have gone far enough, you have crossed my boundary I am afraid now." He testified that the logs were cut, "Straight up behind from where I stopped building the roads."

■ When Mr. Wiss testified, no foundation was laid for impeachment by asking him if he had made such statement to Mr. McClain. Thus, Mr. McClain's testimony was not admissible to impeach the testimony of Mr. Wiss. *James v. State*, 506 S.W.2d 797 (Tenn.Cr.App.1973). Mr. Wiss was not a "prosecutor."[2] or a party. He was present in the Courtroom and actually testified. Evidence of the extra-judicial declaration comes within no exception to the hearsay evidence rule. *Breeden v. Independent Fire Insurance Company*, 530 S.W.2d 769 (Tenn.1975).

Moreover, the evidence of this witness was extremely vague. He does not specify whether Mr. Wiss was referring to the west boundary line of both tracts, the southern boundary line of the 200-acre tract, or a boundary of the 50-acre tract. In any event, we are convinced that this testimony was not of such magnitude when viewed in the light of all of the evidence in the case, to have affected the result of the trial. T.C.A. § 27–117.

2. A presentment rather than an indictment was returned in this case. T.C.A. §§ 40–1704 and 40–1705 requiring a "prosecutor" are not applicable when the Grand Jury returns a present-

ment. *State v. Davidson*, 171 Tenn. 347, 103 S.W.2d 22 (1937); *Blackwood v. State*, 204 Tenn. 682, 325 S.W.2d 262 (1959).

The judgment of the Criminal Court is affirmed.

BYERS, J., and FRED GILLIAM, Special Judge, concur.

## OPINION ON PETITION TO REHEAR

The appellant has filed a respectful Petition to Rehear. However, it consists of arguments previously considered and cites no new relevant authority. The Petition does not show any relevant material fact which was overlooked by the Court. For these reasons, the Petition to Rehear must be denied. Rule 32, Rules of Supreme Court (Adopted by this Court); *Everett v. State*, 528 S.W.2d 25 (Tenn.1975); *State v. Robbins*, 512 S.W.2d 265 (Tenn.1974).