IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 16, 2006

## STATE OF TENNESSEE v. MICHAEL E. BUNTING

**Appeal from the Criminal Court for Sullivan County**
**No. S48,472, S47,395     Phyllis H. Miller, Judge**

_____

**No. E2005-00321-CCA-R3-CD - Filed July 18, 2006**

_____

The Defendant, Michael E. Bunting, was convicted by a Sullivan County jury of possession of less than .5 grams of cocaine for resale, and he subsequently pled guilty to felony failure to appear. Following a joint sentencing hearing for these two convictions, the trial court imposed an effective twenty-one-year sentence as a Range III, persistent offender to be served in the Department of Correction.[1] In this appeal as of right, the Defendant argues that: (1) the evidence is insufficient to support his cocaine possession conviction, and (2) a sentence of community corrections was appropriate, and his sentences were improperly enhanced in violation of Blakely v. Washington, 542 U.S. 296 (2004). After a review of the record, the judgments of conviction and resulting sentences are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

William A. Kennedy, Assistant Public Defender, Blountville, Tennessee, for the appellant, Michael E. Bunting.

Paul G. Summers, Attorney General and Reporter; Leslie Price, Assistant Attorney General; H. Greeley Wells, District Attorney General; and J. Lewis Combs, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] On February 3, 2005, the Defendant filed a notice of appeal as to the denial of an alternative sentence for his felony failure to appear conviction. Following the motion for new trial hearing on his cocaine possession conviction, he filed a notice of appeal on April 20, 2005, including both offenses. No motion was made to this Court requesting that the two appeals be consolidated, and we find no order in the record consolidating these two cases. See Tenn. R. App. P. 16. Nevertheless, the parties have filed their briefs and otherwise treated the two appeals as consolidated. For judicial economy, and because the appeals involve common questions of law and facts, this opinion will discuss and dispose of both appeals.

# OPINION

## Factual Background

On July 2, 2002, several officers of the Kingsport Police Department conducted a "still watch" of the residence at 933 Dale Street, following a report of gambling and drug activity in the area. Around 9:43 p.m., Detective Cliff Ferguson, from a distance of approximately seventy-five feet and aided by street lights, observed a red Chevrolet Beretta park in front of the Dale Street residence. The Defendant exited the residence and approached the vehicle. According to Detective Ferguson, the Defendant engaged in a conversation with a passenger of the car and then returned to the porch. Shortly thereafter, the Defendant again approached the vehicle, and the passenger got out of the car. Detective Ferguson testified that the passenger "appeared to have money in his hand and he had his other hand stuck out like he was going to receive something." The Defendant "had his hand cupped again palm facing towards the sky and it appeared that [he] was going through his hand trying to find just the right thing[.]"

Believing that a drug transaction was taking place, the officers emerged from their hidden location and ran toward the men. As the officers approached, the Defendant emptied the contents of his hand onto the ground and put his hands up in the air. Detective Ferguson observed several pieces of a white rock substance on the ground in front of the Defendant, which appeared to the officer to be cocaine. Detective Ferguson arrested the Defendant, and no drugs, drug paraphernalia, or money were found on the Defendant's person.

It was later determined that the substance retrieved from the ground in front of the Defendant weighed .4 grams and contained cocaine base. According to Detective Ferguson, the "street value" of the cocaine was between $50 and $100, "depending on the buyer."

Sergeant Tim Crawford was also present on the scene and stated that the Dale Street area was "notorious for open air sales[.]" Sergeant Crawford testified that the passenger of the vehicle was "holding $50.00 cash." Following the passenger's arrest, a glass pipe was discovered on his person "that was consistent with the smoking of crack cocaine."

A Sullivan County grand jury indicted the Defendant for possession of less than .5 grams of cocaine for resale, a Class C felony. See Tenn. Code Ann. § 39-17-417(c)(2)(A). The Defendant was subsequently charged by presentment with failing to appear at a hearing on the possession charge, a Class E felony. See Tenn. Code Ann. § 39-16-609.

A two-day jury trial on the drug possession charge was held in September of 2004. The Defendant testified on his own behalf at trial and maintained that, while he did purchase cocaine, he did not sell any cocaine that night. The Defendant testified that he abused cocaine "on and off" for fifteen years. The jury found the Defendant guilty as charged.

The Defendant later pled guilty to the failure to appear charge.[2] The plea agreement provided that the sentences for cocaine possession with intent to sell and failure to appear were to be served consecutively. The trial court was to determine the length of the sentences and the manner of service.

A sentencing hearing was held on February 2, 2005. The trial court sentenced the Defendant as a Range III, persistent offender to fifteen years for the drug conviction and six years for the felony failure to appear conviction, for a total sentence of twenty-one years. The trial court denied any form of alternative sentencing, determining that a sentence of total confinement was warranted. Thereafter, the Defendant filed a motion for new trial, which was denied. This appeal followed.

## ANALYSIS

### I. Sufficiency of the Evidence

First, the Defendant contends that the evidence was insufficient to support his conviction for possession of less than .5 grams of cocaine for resale, a Class C felony.[3] The Defendant does not dispute that he is guilty of possessing cocaine. He does, however, contend that no facts existed from which a jury could infer that the cocaine was possessed with the requisite intent for resale.

Specifically, the Defendant argues that his version of events is more plausible than that of Officers Ferguson and Crawford. The Defendant asserts that the officers' testimony is suspect based upon the following rationale:

[T]he officers never interviewed anyone at the house they were apparently watching. By their own admission, none of the officers considered talking to the residents of the house or the other persons who were obviously skulking about the property at 933 Dale Street.

There was no evidence found on the [Defendant] that indicated a sale. Furthermore, there was no testimony by the alleged buyer or the other individual in the red car. Absent this, there was clearly reasonable doubt that the [Defendant] sold drugs. . . .

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the

---

[2] Several other offenses were encompassed within this plea agreement. The Defendant does not raises any issues regarding the plea agreement or with the sentences related to those other convictions.

[3] For the sake of clarity, we have re-ordered the issues from the manner in which they were presented by the Defendant in his appellate brief and have also combined claims that dealt with the same issue.

evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

A conviction for possession of cocaine for resale requires proof that a defendant knowingly possessed the substance with the intent to sell. Tenn. Code Ann. § 39-17-417. With regard to a determination of a defendant's intent to sell, proof of intent usually consists of circumstantial evidence and the inferences that can be reasonably drawn from that evidence. See State v. Hall, 490 S.W.2d 495, 496 (Tenn. 1973). Other than an accused stating his or her purpose, intent, or thinking at the relevant times, the trier of fact is left to determine the mental state by making inferences drawn from the surrounding circumstances found by it to exist. See, e.g., Poag v. State, 567 S.W.2d 775 (Tenn. Crim. App. 1978). This Court has also held that it is not improper for an officer to testify as to the common factual distinctions between drug users and drug dealers. See State v. William Aubrey Trotter, No. 01C01-9701-CR-00019, 1998 WL 75423, at *4 (Tenn. Crim. App., Nashville, Feb. 24, 1998).

In the light most favorable to the State, the evidence shows that the officers responded to a report of gambling and drug activity in the Dale Street area, an area "notorious for open air sales[.]" The officers observed a vehicle park across from the residence at 933 Dale Street and the Defendant approach the vehicle, speak with a passenger, and then go back to the residence. The Defendant then returned to the vehicle, and the passenger exited the vehicle holding $50 in his hand. At this time, the Defendant sorted through something in his hand. When the officers began to approach the Defendant, he emptied the contents of his hand onto the ground. The Defendant had no drug paraphernalia of the type used for consumption of crack cocaine, but the passenger had a glass pipe on his person. Detective Ferguson found several rocks of crack cocaine on the ground where the Defendant had been standing. The jury, as was its prerogative, chose to accredit the testimony of the State's witnesses and reject the Defendant's version of events. Accordingly, we conclude that

the evidence was sufficient for the jury to find beyond a reasonable doubt that the Defendant possessed the cocaine with the intent to sell it. See State v. Michael Bills, No. W2005-01107-CCA-R3-CD, 2006 WL 739851 (Tenn. Crim. App., Jackson, Mar. 22, 2006).

## II. Sentencing

Next, the Defendant challenges two aspects of his sentence. First, he submits that the trial court erred in finding him ineligible for placement in a program of community corrections.[4] Second, he argues that "the trial court erred in sentencing the [Defendant] to more than the minimum sentence in accordance with Blakely v. Washington."

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b) (2003);[5] State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported

---

[4]The Defendant references case law pertaining to both probation and community corrections. However, the argument section of his brief does not address probation but focuses solely on the denial of community corrections. Therefore, this opinion will discuss the denial of community corrections.

[5]We note that the legislature has recently amended several provisions of the Criminal Sentencing Reform Act of 1989, said changes becoming effective June 7, 2005. However, the Defendant's crimes in this case, as well as his sentencing, predate the effective date of these amendments. Therefore, this case is not affected by the 2005 amendments, and the statutes cited in this opinion are those that were in effect at the time the instant crimes were committed.

by the record.  State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).  The burden of showing that a sentence is improper is upon the appealing party.  Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

## A.  Community Corrections

The Defendant argues that the trial court erred in failing to grant him a sentence of community corrections.  A defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary."  Tenn. Code Ann. § 40-35-102(6) (2003); see also State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001).  The following considerations provide guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed.  Tenn. Code Ann. § 40-35-103(2), (4).  The court should also consider a defendant's potential for rehabilitation or treatment in determining the appropriate sentence.  Id. § 40-35-103(5).

The Community Corrections Act was meant to provide an alternative means of punishment for "selected, nonviolent felony offenders . . . , thereby reserving secure confinement facilities for violent felony offenders."  Tenn. Code Ann. § 40-36-103(1); see also State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).  Pursuant to statute, persons who satisfy all of the following minimum criteria are eligible for participation in a community corrections program:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;

(2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(3) Persons who are convicted of nonviolent felony offenses;

(4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(5) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]

(6) Persons who do not demonstrate a pattern of committing violent offenses[.]

Tenn. Code Ann. § 40-36-106(a). However, persons who are sentenced to incarceration or who are on escape at the time of consideration will not be eligible, even if they meet these criteria. Id.

Persons who do not otherwise satisfy the minimum criteria and who would usually be considered unfit for probation due to histories of chronic alcohol abuse, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community may be considered eligible for participation in a community corrections program. Id. § 40-36-106(c).

Even though an offender meets the requirements for eligibility, he or she is not automatically entitled to participation in a community corrections program. See State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998); State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Rather, the Act provides that the criteria shall be interpreted as minimum standards to guide a trial court's determination of whether that offender is eligible for community corrections. Tenn. Code Ann. § 40-36-106(d).

The Defendant was convicted of Class C and E felonies and, based upon his prior felony convictions, was sentenced as a Range III, persistent offender. Because of his status as a persistent offender, he receives no presumption in favor of alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). The Defendant admits that he should not receive presumed status as a favorable candidate for alternative sentencing, that he has a lengthy criminal history,[6] and that he has violated probation and parole in the past. Nonetheless, he asserts that he should receive a non-incarcerative sentence because "he has no recent felony convictions. His last felony conviction was in 1996." Moreover, he states that he has a drug problem and "[t]his problem could more effectively be addressed in community corrections than in prison."

---

[6]In addition to having accumulated the five prior felony convictions necessary to establish his status as a persistent offender, the Defendant's adult criminal history, which spans twenty-two years, includes another felony conviction and over thirty misdemeanor convictions.

Arguably, the Defendant's misdemeanor convictions for assault, resisting arrest, and disorderly conduct demonstrate a past pattern of behavior indicating violence such as to render him ineligible for a community corrections sentence. State v. Brian Lee Cable, No. E2005-00608-CCA-R3-CD, 2006 WL 1381484, at *7 (Tenn. Crim. App., Knoxville, May 19, 2006); but see State v. Artez L. Moreis, No. W2002-00474-CCA-R3-CD, 2003 WL 1860537, at *15 (Tenn. Crim. App., Jackson, Apr. 2, 2003), perm. to appeal denied, (Tenn. Dec. 8, 2003) (concluding that defendant's three convictions for simple assault several years earlier did not represent a pattern of violence that would make him ineligible for community corrections).

Additionally, under subsection (c) of the Community Corrections Act, if the Defendant is statutorily ineligible for probation, he is per se ineligible for community corrections on a "special needs" basis. Tenn. Code Ann. § 40-36-106(c); See also State v. Kendrick, 10 S.W.3d 650, 655 (Tenn. Crim. App. 1999); State v. Grisby, 957 S.W.2d 541, 546 (Tenn. Crim. App. 1997); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996); State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989). An offender is eligible for probation if he is sentenced to eight years or less and has not been convicted of certain enumerated offenses. Tenn. Code Ann. § 40-35-303(a) (2003). The Defendant would be eligible for probation only on the six-year sentence for felony failure to appear. Regarding his fifteen-year sentence for cocaine possession with intent sell, he would be ineligible for a community corrections sentence on a "special needs" basis.

Regardless of eligibility, the record supports the trial court's finding that the Defendant would be unlikely to comply with the requirements of a community corrections sentence. We agree with the trial court that, given the Defendant's extensive criminal history "that goes for page after page after page[,]" his drug problem would best be treated in a correctional facility. The Defendant has a long history of criminal conduct rendering confinement necessary to protect society from additional criminal behavior by the Defendant. Furthermore, measures less restrictive than confinement have been repeatedly and unsuccessfully applied to the Defendant. Accordingly, we agree with the trial court that the Defendant is unsuitable for community corrections. See State v. Donald E. Bryant, No. E2002-00690-CCA-R3-CD, 2003 WL 934243, at *4 (Tenn. Crim. App., Knoxville, Mar. 10, 2003).

## B. Blakely issue

The Defendant, relying upon the United States Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004), argues that his sentence was imposed in violation of his Sixth Amendment right to a trial by jury.[7] The Blakely decision held that any fact that increases a sentence beyond the "relevant statutory maximum," defined as the maximum sentence that a judge may impose without making any additional findings of fact, must be submitted and proved to the jury beyond a reasonable doubt or admitted by the defendant. Blakely, 542 U.S. at 301-02. Thus, adherence to Blakely requires that any enhancement factors, other than prior criminal history, can be applied only if found by a jury or admitted by the Defendant. Id.

---

[7] The Defendant does not argue that the trial court improperly applied enhancement factors or that it failed to consider applicable mitigating factors.

First, the Defendant's sentence was properly enhanced solely on his prior criminal history. See Tenn. Code Ann. § 40-35-114(2) (2003). Sentencing enhancement based upon prior criminal history is not implicated under Blakely. Second, the Tennessee Supreme Court has considered the impact of the Blakely ruling on Tennessee's sentencing scheme and has concluded that the Criminal Sentencing Reform Act of 1989, under which the Defendant was sentenced, does not violate a defendant's Sixth Amendment rights. See State v. Gomez, 163 S.W.3d 632, 661 (Tenn. 2005). Accordingly, the Defendant's argument on this basis has no merit.

## CONCLUSION

In accordance with the foregoing authorities and reasoning, we conclude that the evidence is sufficient to support the Defendant's conviction for possession of less than .5 grams of cocaine for resale, the trial court's decision denying the Defendant a sentence of community corrections was proper, and the Defendant was not sentenced in violation of Blakely v. Washington. Accordingly, the judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE